UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JAMES W. GRANQUIST, )<br>      Plaintiff, )<br>)<br>v. )<br>)<br>NANCY A. BERRYHILL, Acting )<br>Commissioner of Social Security, )<br>      Defendant. ) | Cause No.: 2:16-CV-400-PRC |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff James W. Granquist on September 14, 2016, and Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 12], filed on February 23, 2017. The Commissioner filed a response on May 8, 2017, and Plaintiff filed a reply on June 5, 2017. Plaintiff challenges the Social Security Administration's determination that he is not disabled under the Social Security Act.

**PROCEDURAL BACKGROUND**

Plaintiff filed his initial applications for a period of disability and disability insurance benefits on July 11, 2013, alleging disability beginning January 2, 2001. The claim was denied initially and on reconsideration, and he requested a hearing, which was held before Administrative Law Judge (ALJ) Dennis M. Matulewicz on December 2, 2015. On December 18, 2015, the ALJ issued an unfavorable decision, making the following findings:

    1.    The claimant last met the insured status requirements of the Social Security Act on December 31, 2005.

    2.    The claimant did not engage in substantial gainful activity during the period from his alleged onset date of January 2, 2001[,] through his date last insured of December 31, 2005.

    3.    Through the date last insured, the claimant had the following severe impairment: bilateral congenital hearing loss.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he should never work with hazards including dangerous/unprotected machinery or work at unprotected heights and no jobs requiring verbal skills.

6. Through the date last insured, the claimant was capable of performing past relevant work as a construction laborer. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from January 2, 2001, the alleged onset date, through December 31, 2005, the date last insured.

(AR 22-25).

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. Plaintiff filed this civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse

only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing

3

court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. § 404.1520(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If no, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or

4

equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if no, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity (RFC), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 885-86; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

**ANALYSIS**

As mentioned above, the Step Three analysis requires the ALJ to determine whether the claimant meets one of the listed impairments provided in an appendix to the Agency's regulations. The ALJ found that Plaintiff did not meet any of the listing requirements and accordingly went on to the fourth step. Plaintiff thinks that this was an error, arguing that the ALJ erred in finding that Plaintiff does not meet Listing 2.10 for hearing loss not treated with cochlear implantation.

Listing 2.10 can be met in two ways. The method for meeting the listing at issue here is paragraph A, which requires "[a]n average air conduction hearing threshold of 90 decibels or greater

in the better ear and an average bone conduction hearing threshold of 60 decibels or greater in the better ear." 20 C.F.R. Pt. 404, Subpt. P, App. 1., 2.10.A. The average air conduction and bone conduction are determined by averaging the hearing thresholds at 500, 1000, and 2000 Hertz. *Id.* at 2.00.B.2.C.

The Commissioner argues that an audiologic examination from October 11, 2013, shows that Plaintiff's hearing does not meet the requirements of Listing 2.10. The examination report shows a marking corresponding to 250 Hertz and 50 decibels. The symbol used is marked in the audiogram key as indicating bone conduction for the left ear and is accompanied by two handwritten characters which look like "v+," "vt," or—as the Commissioner asserts—"rt." The Commissioner states, without any clarification or explanation, that this indicates that the result is for the right ear, and, thus, the average bone conduction hearing threshold for the better ear—the right ear—is 50 decibels.

This argument fails. The result at 250 Hertz is not equivalent to—or even used in the calculation of—the average bone conduction threshold as used in evaluating whether the listing is met. Though no further reason to reject this argument is needed, the characters identified by the Commissioner as "rt" are not clarified on the report. The key lists several abbreviations, but none of these abbreviations correspond to the characters. The Court is not persuaded that the characters must mean that the indicated result is for the right ear; the symbol for the left ear was used, and a symbol for the right ear exists. Other meanings are possible. For example, the characters could be "vt," which could stand for "vibrotactile response," which is consistent with the statement on the following page that Plaintiff feels vibrations. (AR 349); *see Lopez v. Astrue*, No. 08 Civ. 8820, 2009 WL 1934589, at *4 (S.D. N.Y. June 23, 2009) (describing a plaintiff's audiological testing that noted "profound hearing loss with only vibrotactile response to bone conduction at low frequencies").

6

It is unclear what the characters are and what they mean, and the Court need not resolve this matter. It is enough that the 250 Hertz result is not used in determining Plaintiff's average bone conduction. The results at 500, 1000, and 2000 Hertz appear to meet the corresponding listing requirements. Audiologic testing performed on February 19, 2014, also shows listing-level hearing impairment. (AR 351).

The Commissioner posits that a February 2008 medical record describes Plaintiff as "very hard of hearing," suggesting that Plaintiff has some degree of hearing. However, the very same sentence that the Commission drew that language from reports that "as a matter of fact, he is deaf." *Id.* at 281. The Commissioner's argument is baseless.

Further, the Commissioner is attempting to defend the ALJ's determination on grounds that the ALJ did not use. The ALJ determined that Plaintiff did not meet Listing 2.10 because he found that Plaintiff "cannot objectively establish his deafness prior to the date last insured," not that Plaintiff's audiologic examination results did not meet the listing requirements. *Id.* at 24. The ALJ found that "[t]he evidence confirms the claimant's deafness." *Id.* Under the *Chenery* doctrine, an agency's lawyers may not defend an agency's decision on grounds that the ALJ did not cite. *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943); *see also Parker v. Astrue*, 597 F.3d 920, 923 (7th Cir. 2010) (applying the *Chenery* doctrine in the social security context). Thus, the Court will review the ALJ's determination on the basis that the ALJ stated—that Plaintiff did not meet his burden to show that he met Listing 2.10 before the date last insured.

The ALJ's full explanation of his determination that Plaintiff did not meet the listing is one sentence: "There is no objective medical evidence that shows the claimant's deafness was of Listing level prior to the date last insured." (AR 23). The record contains no objective medical evidence that

7

pre-dates the date last insured, but the record is replete with evidence that Plaintiff has been deaf from birth. Dr. Ventrapragada opined that Plaintiff's hearing loss is likely congenital, noted that Plaintiff has a positive family history for hearing loss, and stated that Plaintiff's hearing loss had been noted since birth. *Id.* at 353. Plaintiff testified at his hearing and told medical personnel that he had been deaf from birth. *Id.* at 56, 349, 350. James S. Gordon, Mary J. Shea, Victor M Gonzalez, and William Boyer submitted statements that Plaintiff had been deaf since before the alleged onset date. Robert Gerlach and Thomas Driscoll submitted a letter stating that Plaintiff has had his hearing impairment since birth and attended schools for the hearing impaired. School records show that Plaintiff was in the Deaf Department in Seattle Public Schools. The ALJ cited no evidence tending to show that Plaintiff did not meet the listing on his alleged onset date. Further, the ALJ's finding at Step 2 is that Plaintiff has bilateral *congenital* hearing loss. *Id.* at 22.

This is unlike the situation in *Sienkiewicz v. Barnhart*, cited by the Commissioner, in which the plaintiff offered no evidence at all of disability prior to the date last insured. 409 F.3d 798, 802 (7th Cir. 2005). Here, Plaintiff has provided evidence that he was deaf as of the alleged onset date in the form of testimony, medical opinion, school records, and statements from acquaintances. The ALJ disregarded all of this because it is not objective medical evidence.

Social Security Ruling (SSR) 83-20p provides "[i]n disabilities of nontraumatic origin, the determination of onset involves consideration of the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity." 1982-1991 Soc. Sec. Rep. Serv. 49, 1983 WL 31249, at *2 (1983). The medical evidence "is the most important factor, and the chosen onset date must be consistent with it." *Henderson ex rel. Henderson v. Apfel*, 179 F.3d 507, 513 (7th Cir. 1999). "In determining the date of onset of disability, the date alleged by the individual

should be used if it is consistent with all the evidence available." SSR 83-20p, 1983 WL 31249, at *3. "In cases where there is no medical evidence as to the precise onset date, but where the disabling impairment seems to have occurred prior to the date of the first recorded medical examination, the ALJ 'should call on the services of a medical advisor' to help in making the necessary inferences." *Lichter v. Bowen*, 814 F.2d 430, 434 (7th Cir. 1987) (quoting SSR 83-20p, 1983 WL 31249, at *3). In light of the significant and consistent evidence of Plaintiff's history of extreme hearing loss, it seems that onset of Plaintiff's listing-level deafness occurred prior to the October 11, 2013 audiologic examination. The ALJ erred by not calling on a medical advisor to aid in setting the onset date. Remand is required.

Plaintiff asks for an award of benefits, which is only appropriate "if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). Plaintiff alternatively asks for remand of this matter to the agency for further proceedings. Here, remand for further proceedings is proper so that a medical advisor's opinion can be sought regarding Plaintiff's onset date.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief requested in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 12], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this Opinion and Order. The Court **DENIES** Plaintiff's request to award benefits.

SO ORDERED this 22nd day of December, 2017.

                                                      s/ Paul R. Cherry
                                                      MAGISTRATE JUDGE PAUL R. CHERRY
                                                      UNITED STATES DISTRICT COURT